This video was made in Cooperation with the U.S. Department of State.  Thank you for watching. This video was made in Cooperation with the U.S. Department of State. This video was made in Cooperation with the U.S. Department of State. My first point is that the Board misconstrued the plain meaning of the claims to include user selection. In its final written decision, it understood this claim language as follows. A user is permitted expressly to select which account mode is desired at the appropriate point in time. But a human user cannot be the subject that carries out these elements of the claims. It is physically impossible for a human user to obtain a user ID token from the merchant terminal or communicate identity confirmation information associated with the user ID token to the merchant terminal. Most importantly, a user cannot flexibly assign account roles within a payment system that are adapted to selectively function as either a merchant or purchaser account during any particular transaction. A human user cannot physically or computationally execute these tasks. Instead, the only input provided by the human user is whether to buy or sell an item. And it's the claim system that carries out these claim elements in order to effectuate that user's input. Can you, I mean, you rely a lot on this disclaimer argument as it relates to user selection. But yet I don't see anywhere that the examiner referred to any such disclaimer in connection with the allowance. Yes, Your Honor, so it is Square's position that we raise this disclaimer in the principal response brief. I mean, putting aside the waiver as it relates to this proceeding, even if we're looking at the merits, I don't see that the examiner actually relied on it for purposes of the allowance or disallowance. Oh, with respect to the examiner. Yes, so the examiner did rely on it because if you look in the notice of allowance and it points to two elements. What page in the record are you relying on? That is 1597, 1598. And let me cite the applicant's argument. The applicant specifically stated that the prior only showed that, quote, a person can assume these different roles, but this does not teach that an account within a payment system can selectively take on these roles. Now, so when the examiner responded with an allowance, there was Wong et al that allegedly the examiner had found disclosed the bidirectional account element. So that was precisely, it was a bidirectional account element and another element that ultimately the examiner decided, no, as it turns out, this prior does not disclose the bidirectional account element. So, but I think another important point is that even if this court does not accept this as a clear and unmistakable disclaimer, the prosecution history still positively confirms the plain meaning of the claims, which clearly excludes user selection of account roles. And so straight path and its progeny would require this plain meaning of the claims. So again, it is the applicant specifically referred to the fact that the prior art only describes a person that can assume account roles of buying and selling an online marketplace. That's fundamentally different. That is different than the specific infrastructure and the inventive concept disclosed in the bidirectional account element. So turning back to my point with respect to plain meaning, the specification further reinforces the claims plain meaning. It states that, quote, the accounts for the payment system are preferably designed so that an account may selectively function as either a merchant or purchaser during any particular transaction. Designed in this context must mean that the payment system is programmed to select the appropriate account role for each transaction. This is because it is impossible to design the future actions of a human user. And this is precisely the section of the specification cited by the board to support its construction that a user may, quote, expressly select which account mode is desired. And that's at appendix page 14. That's the only citation to specification found when discussing reading on At that point, Think timely raised its argument against the board's improper claim construction. Think never challenged and expressly agreed with Square's original construction that excluded user selection of account roles. In the claim construction section of its own petition, Square stated, quote, the claims say that these roles are assigned by the claimed system. End quote. That's at appendix 97. Both parties cited that same prosecution history passage that reveals a clear disclaimer of user selection and Square used that same prosecution history passage to support its point about what the claims say. Think also timely raised its construction of user selection in its principal response brief before the board. Specifically, Think stated that the prior art only teaches a user assuming the role of a seller or buyer in an online marketplace and fails to disclose, quote, selective functionality. That's appendix 1808, 1809. In that same passage, Think uses the term selective functionality limitation in showing that this limitation is not met when you have user selection. To be clear... I still don't understand. Your argument is, I'm assuming it's not waived, and there's a strong waiver argument that the other side I'm sure is going to make, but assuming it's not waived, you say that that specification language that you cite to shows that you're talking about the functionality of the system so that it can either function as a merchant or a purchaser selectively, but it doesn't say that the system controls the selection. Actually, it does. Basically, linguistically speaking, what is the subject carrying out these claim elements? To the point of waiver, Square did say it's a claim system that selects the account roles, but just linguistically speaking, if you're talking about a system that obtaining a user ID token or communicating identity confirmation information and being adapted, who's adapting what? Adapted to selectively function. You can have a system where it can work as either the purchaser or the merchant, but still have the one who's doing it do the selection. I'm having a hard time understanding how that specification language actually says we're not going to have a system in which the user can decide whether they're going to be the merchant or not. The important area to distinguish is the user's activity and input versus how the system responds to that, and whether the user has to turn some type of switch and go to a purchasing page, turn another switch, and go to a selling page. That was the state of the art. That's what the examiner found. That was the state of the art before the Appellant's invention, before the Appellant's patent. Again, this idea of selectively adapting account roles, that's sitting within the payment system. That's really important to see if it's happening within the payment system. The other important point is the idea of flexible account roles as opposed to fixed account roles. This sort of flexibility, this design, can only be done by a programmer. I want to pivot to how this plays out in looking at Dalzell, which is the only prior art that the board looked at and that's square-sided to support that there's a teaching of the bi-directional account element in the prior art. The board never found that Dalzell disclosed the bi-directional account limitation properly construed. The board never found that Dalzell disclosed a payment system that selected account roles. Instead, the board only found that a buyer from a particular account can add a seller feature to that particular account without the need of creating a whole new account. But the board at best found that Dalzell disclosed user creation of fixed account roles followed by user selection of those account roles for buying and selling. The bi-directional account element requires flexible account roles selected by the payment system. So the board's misconstruction that the claims allow user selection of fixed account roles led it to make insufficient factual findings to support its obviousness ruling. So again, there's a difference between fixed roles and flexible roles. And one aspect, one important feature that's found only in the Avalance invention is the idea of having a unified payment system, a unified database, everything being within the same package infrastructurally. And that cannot be done if you're having a user separately creating accounts, a user separately selecting which account am I going to be logging into, which am I going to be selecting. It's fundamentally different. It's a path-dependent difference. It's a coding difference. It's in the design, words like design, words like where the subject really can only be the payment system. Linguistically speaking, why would you have a list of actions and some of those actions were saying the payment system carries out. Some of the actions were saying the user pays out. Linguistically, I mean true, in patent claims you have passive voice, but is it linguistically possible? I'm sorry, I'm having such a hard time. So the system is going to randomly just assign someone to be the purchaser or the seller. What if you don't want to be the purchaser or the seller in a given circumstance? Are the systems just going to make you that? Absolutely not, Your Honor. The system is going to effectuate the user's input. And so the user's input would be making selections about what to do, about what to buy or sell in an online marketplace. But that's different than selecting the account rules and everything that goes along with it, because there's a lot of other infrastructure that's carried through all of that. It's different for a user to select an account rule compared to making a decision whether to buy or sell an item. It's fundamentally different and it's literally the reason what the issue that the argument that the applicant raised and the examiner accepted, allowed the claims after that point and specifically removed the prior art which the examiner did find disclosed a bidirectional account element. Let's hear from the director and we'll save you rebuttal time, Mr. Ribicoff. Thank you, Your Honor. Okay, Ms. Shanbooth. Good morning. I'm actually Counsel for Square, the petitioner in the matter. May it please the Court, the Board's decision should be affirmed for three separate reasons, all of which were alluded to in Counsel for Think Computer's opening remarks. First, the only claim construction dispute that's raised in the appeal was waived. It wasn't raised below. This can be seen, and I can walk through the references to the record below that were mentioned just now, that this can be seen on page 19 of Think Computer's brief where it puts forth the construction with no citation to the underlying record. And the reason that there's no citation is because this construction for which Think Computer is now advocating was not raised in the underlying proceedings. Think Computer's counsel pointed to two different places in the underlying record where it claims to have argued this construction, neither of which make any sense. And I'll walk through them, but I want to back up and just make one point, which is that in its briefing before this Court at pages 16 and 17 of its opening, Think Computer admits that it's raising a different issue than the one that was before the Board. It says, in its decision on request for rehearing, the Board, addressing only a different issue, found that simultaneous merchant and purchaser account functionality was not required for the same transaction. Nowhere did the Board address... Well, he's saying the Board addressed a different issue, but he's not necessarily conceding that he didn't raise this issue with the Board below. He's just saying that the Board's finding is problematic because it addressed a different question. Good point. He did point to two places where he alleges that he raised this issue below, so let's walk through those two. The first is in the patent owner response in 1808 and 1809. And what was going on in the patent owner response in 1808 and 1809 is that the patent owner was making a misguided argument to the Board that they shouldn't institute CBM proceedings because the prior art that Square had presented was similar to the prior art that had been before the examiner. So they're making a 325D argument in that section, and later on they go on to talk in a great amount of detail about claim construction disputes and never raised bidirectional accounts in that context. And they go on to talk about the elements that are missing from the prior art, and again, they never mention the bidirectional accounts in that context. So it was mainly in the context of this 325D discussion, and the Board both rejected that 325D argument on its merits at Appendix 28, and also at Appendix 45, which is the decision on the request for rehearing at footnote 1, the Board said that that was not a claim construction argument. That rather that argument was merely a compare and contrast between prior art references that really wasn't relevant in the context it was waived. The Board goes on in a fair amount of detail about this bidirectional accounts claim construction argument that it reviewed and says that that one wasn't raised in the earlier proceedings, but nonetheless goes on to look at the merits. And then the Board didn't have the argument that's currently in front of this panel before it at all. The other citation to the earlier record that the computer references is this out of context suggestion that Square agreed with its construction, which just couldn't be further from the truth. Square cited the passage that we're all talking about now from the file history for the uncontroversial fact that there's this feature that the account has to have a feature of being bidirectional, not to talk in any way, shape, or form about how the features put into place. Square even said specification does not define what constitutes assigning or prescribe in any particular method of assigning a role. Given the disclosure of the 808 payment or remitter of payment depending on the transaction. So this idea that Square at some point agreed with what the computer is now advancing in the construction is not supported by the record. Let's talk about some of the merits. Assuming that we get passed waiver, their argument is that in the prior art, you had this type of selection process, and what they wanted to do was to come up with a better system so that when I go searching for a product, I automatically am treated as the purchaser. Versus when I'm responding to someone's search, then I'm automatically treated as the seller. So why isn't that a novel development over the prior art and something that reasonably could be within the context of this claim? Well, because it's a mischaracterization of what happened in the underlying record and in the file history. The Jane reference over which the alleged prosecution disclaimer was made, it's a reference related to an eBay system, and it doesn't say anything about how the system can both buy things and sell things, and it can receive feedback. So it's about a method of providing feedback to somebody where you can see their feedback as a user, as a purchaser, and you can see their feedback as a seller in one place. It doesn't say anything about that user actually purchasing or selling. It essentially just says, okay, so the difference here, the difference in the Dalzell reference, is that it is actually talking about a single account that both purchases and sells product. And that's detailed in the board's decision at 28 and 29, where they cite to nine different paragraphs of Dalzell, and then they actually cite to 17 different paragraphs from our expert witness, Dr. Sade, that talks about how Dalzell performs this bi-directional accounts limitation. And it's utterly different than the prior art that is supposedly distinguished in the prosecution history. It's also largely unrebutted, because in looking at Dalzell's disclosures of the bi-directional accounts limitation and of this assigning step, the only thing that Think Computer submitted in response to that was a declaration from the inventor on the 808 patent and the CEO of Think Computer that the board found lacking corroboration and entitled to very little weight. So what the record shows with regard to the Dalzell reference is that it absolutely discloses at the same level of detail as disclosed in the 808 patent. You agree that Dalzell is not identical, is that right? Not identical to what, Your Honor? Not identical to what they're claiming. Well, no, what I was actually distinguishing just now is the reference that they claim to have disclaimed over in Dalzell. I actually think that the level of detail disclosed regarding the assigning step in the 808 patent is precisely the same as the level of detail disclosed regarding the assigning step in Dalzell. Okay, so you say it is identical to what they're claiming. To the extent that it is disclaimed at all. Or as an alternative, all they would need would be details to distinguish Dalzell, because it isn't identical. I do believe that to the extent that the element is disclosed in the 808 patent, it is identically disclosed in Dalzell. Does that answer your question? I don't think that's... The Board did not find that it was the same, as I recall. The Board did find that Dalzell... At Appendix 2829, the Board did find that Dalzell contained... I mean, I don't think they used the word identical, but contained the bidirectional accounts limitation of the 808 patent. The general concept, but their claims go beyond the general concept. Isn't the question how far beyond they would need to go in order to distinguish Dalzell? So, first of all, I don't believe that this element that we're talking about today, the assigning element, goes much beyond the general concept. The claim language is quite straightforward. The claim language talks about a feature of the account, not in any detail as to how it's put into place. Specification does the same thing, and Dalzell does the same thing. The Board did find that the Claim 1 and its bidirectional accounts limitation, including its assigning step, were met by Dalzell and didn't distinguish the Dalzell reference from what's disclosed in the claims in any manner. The last point I'd like to talk about, unless Your Honor has more questions about the Dalzell reference, is the merits of the claim construction position that's now before this Court. The Board's construction of the bidirectional accounts limitation is absolutely consistent with the disclosures in the 808 patent specification in the claims and in the file history. As for this file history disclaimer argument, Judge O'Malley is absolutely right that the Notice of Allowance does not mention the bidirectional accounts limitation. It only mentions a different limitation, which is the product catalog. The Board found that this claim language didn't require any detailed or expressed construction because it was straightforward. This assigning limitation is not the crux of the 808 patent. It's essentially an 11th hour argument that the other arguments upon which it had been relying that are more central to the patent had failed. So there isn't a lot in the record, in the 808 patent or otherwise in the record, regarding this element. But the Board did look at Think Computer's late-raised bidirectional accounts limitation argument, and it found that the argument fails because there is no file history disclaimer. It looked at the file history and it said that it found the reference unpersuasive and that it didn't alter its original understanding of the construction, which makes sense given that everything in the record talks about the feature of the account and not how the feature is put into place. That actually brings me to something that you've heard from counsel within Computer to which I wanted to respond, which is that there's this discussion as to how the system assigns the account role. There's no disclosure in 808 patent in that level of detail. This is essentially an incidental step relating to a feature of the claim system, and all the disclosures are consistent with the idea that the user is going to make this selection and the account is essentially going to go into this particular mode. I don't really think there's much dispute that the user plays a role and then the system plays a role. And for that reason, I think King Computer's argument fails for an additional reason, which is that they really haven't explained how this distinction in this claim construction for which they're currently arguing would change the results in this case. Dalzell has detailed disclosures regarding a single account, bidirectional account, and it has disclosures that are consistent. Dalzell really does, though, make it clear that it's a user preference. I think one thing that's really important, Dalzell, is paragraph 49, where it defines user as user account. And throughout, as it talks about user, you can tell that what it's talking about is not just the human being, but the account. The account can be used for both purposes. And Dr. Sade has paragraphs in his declaration, I believe it's 147 to 164, where he goes into... Does it actually say, I'm sorry to interrupt you, but the term user refers to an individual or set of individuals associated with the user account. It doesn't say that it refers to a user account. Are you looking at paragraph 49? I'm looking at paragraph 49 on Appendix 873. Our expert read this and interpreted it as a suggestion in context that the entire reference, when talking about users, is talking about user account. I'm just asking about the language that's in paragraph 49. I think it's the associated with a particular user account language that's particularly important, because it's showing that... It talks about how a user could also be a group of users. It could be a group of people who are selling something. But they're always going to be associated with this particular user account. And throughout the patent, user and user account are used interchangeably, but they're always used to refer to a single account, which is a bidirectional account. Does that answer your question? But that's very different from a circumstance, whether you agree with them or not, but from a circumstance where you're not involving the user in the selection process. This actually expressly talks about the user being involved in the selection process. I don't think there's a disagreement whatsoever that a user is involved in this process. Involved in the process. But say I am manufacturing something that I like to sell, but I need to buy the ingredients. Say I'm baking something. I need to buy the ingredients and I need to sell the end product. And so the question is, do I have to make a selection as to which role I'm playing, or is the mere fact that there's an order going out automatically change that role? Correct. That's what I believe does all disclosures. Because in figures 1A and 1B, you can click sell yours here if you want to sell something. You can click buy yours here if you want to buy something. But there's no disclosure that you have to switch to a different account or anything like that. Everything is utterly consistent with the notion that the user is using a single account and that a client will then reactively switch into the appropriate mode, which is identical to the level of detail disclosed about this element. But your argument is that even if we were to  say Delzel satisfies the claim limitation, but it seems as if right now you're now agreeing that there's some user selection that's required about whether you're going to be the buyer or the seller. And in fact, their claim construction, which might have been waived, is talking about there's no user selection. So I'm confused. I don't completely understand their claim construction, to be straight with you. That said, I know that on page 9 of their reply brief, they say the user must choose what to buy or sell. The claim payment system makes this process easier than ever by responsibly assigning account roles. That's on page 9 of their reply brief. That's exactly what I believe that Delzel does. So assuming that the representation at page 9 of their reply brief is consistent with their claim construction, I absolutely believe we meet their claim. Where in Delzel, point to me, what figure were you referring to where you say that it automatically does that once the user identifies itself as a purchaser just by making a purchase? It's figures 1A and B, where it shows a sell yours here and add to shopping cart button. And our expert's declaration discusses figures 1A and 1B and how a person of ordinary skill in the art would understand that to trigger the reflexive assignment of account roles in his declaration. There's a number of paragraphs on it, but 148 is the most critically relevant on appendix 194, and the entire bidirectional accounts limitation of the 808 patent was met by Delzel. Any more questions? Thank you, Ms. Schoenberg. Mr. Rabicoff. Please report. Three points. First point is just to address the waiver argument. It's interesting that Square appears not to dispute the meaning of what I read before, but again, I'm going to refer to appendix 97 in Square's petition. Quote, notably the claims say that these roles are assigned by the claim system. The specification does not define what constitutes assigning or prescribes any particular method of assigning a role. That's different. Talking about the fact that the claim system selects the account roles, that's one thing. Another thing is how does it go about this specific detail by detail? How does it select those roles? That's not disclosed. What is disclosed is the payment system selects the account roles. We have to distinguish between this concept of selection where the payment system is selecting the account roles and the human user is selecting what to buy or sell. We're supposed to do a claim construction analysis of your specification that would, if we send it back, require a court to find that it's not enabled? I don't understand your point. This is the point that the board made a misconstruction with respect to the construction you're describing now. You're essentially conceding that if we adopt that construction, if you go back and look at the specification, there's nothing in the spec that enables that construction. No, Your Honor, that's not what I'm saying. I'm saying that the specification specifically says that the claim system selects the account roles. And where in the spec does it describe how that works then? How it does that? In fact, the board itself actually points to, I would say, one example of where that would be, which is Appendix 64, Column 3, 15-22. I mean, that's where the reference of how the payment system is designed so that it can selectively function as either a merchant or purchaser during any particular transaction. But the critical part is that this process of selecting the user account when that's appropriate has to be carried out automatically. After the user input elicits this process, the rest has to be carried out automatically. But isn't the problem for both the reference and the spec is that once you get to the finer tuning of how it works, that is, carrying it out automatically, that there isn't sufficient detail in the spec to distinguish from dollars held that may not do it automatically. All it says is it's automatic. Well, Your Honor, it goes beyond automatic. It's that for every single transaction, it has to be selected appropriately. And of course, there's other pieces to that. But the key part is that it adaptively selects the proper account role. The key word is within a payment system, within a unified payment system, unlike the prior art, where you have to put in separate payment methods, you have to have separate databases. All that is separate, and the user is turning the switch. I'm now going to go to the buying screen. Turn the switch. Now I'm going to go to the selling screen. It's a fundamental difference, and it's flushed out completely in the specification where it discusses how it has to be designed. But not sufficiently in the claims is, I think, what we need to decide to distinguish dollars held. Right, and I think that the concept of the claims have to, that the account roles have to be adapted to selectively function as either a merchant or purchaser during any particular transaction. These have to be flexible account roles. And I believe that it flushes out the contour sufficiently to understand within the scope of the claims that you must have the payment account selecting these roles. And specifically, the one thing we know for certain is that it's not simply the user that has to navigate this and choose which account role. I think that's fundamental. And again, with respect to waiver, Square has explicitly raised the idea that the claims system is what has to select the roles. So this is really both, and to look a little more at waiver, think had, first of all, never opposed that construction and thereby accepted it. But beyond that, did explicitly, and the fact that the heading of the section where this construction was discussed involved analysis of alleged prior art, it still very explicitly chose that prosecution history section where, hey, the prior art only discloses a user assuming these different account roles, but not in accounts within a payment system being adapted to selectively choose these roles in response to user input. And that's a fundamental difference. The automation is what is fundamental. It's what allows all of the elements of the claim to work in harmony and, again, allow a single database, allow a single payment system, everything being unified. Instead of going to separate pages and having the user have to navigate choosing, now I'm in my selling account. I have to operate these things. Now I'm in my buying account. I have to carry out these operations. It's all unified. And that was just simply not in the prior art. And one quick point I want to make on Dalzell is that the board never found that Dalzell specifically disclosed a bidirectional account limitation. I want to read exactly what. So the board only found that, quote, a buyer from a particular account can add a seller feature to that particular account without the need to create a whole new account. Now I point this out because this is the only finding that the board made with respect to the bidirectional account limitation. It did not make any other finding. And this was also the only place where the board referenced the expert testimony, not with respect to any of the other experts' findings, but only with respect to the quote that I just provided, the fact that you have allegedly a single account where you can add a seller feature and have fixed account roles. So that's a far cry from saying that you have flexible selection of account roles by a payment system. Those are two fundamentally different things. And as been discussed, Dalzell explicitly says that it's the user that's selecting whether you're buying or selling within the account of whether you're taking on the role of a buyer account or a seller account. So the board had only disclosed user creation, that Dalzell had only disclosed user creation of fixed account roles, followed by user selection of account roles for buying or selling. Are there any further questions? Okay, please try and wrap it up. I think we have the arguments on both sides. Thank you. Thank you both. The case is taken under submission.